**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CASE NO.:**

TASHAWN FRISBY, on his own behalf
and those Similarly Situated,

     Plaintiff,

v.

JIMCO MAINTENANCE INC.,
a Florida Profit Corporation,
and LYNN FIELD, individually,

     Defendants,

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, TASHAWN FRISBY("Plaintiff or "Frisby"), on behalf of himself and those similarly situated, files this Collective Action Complaint against JIMCO MAINTENANCE INC., a Florida Profit Corporation, and LYNN FIELD, individually (collectively, "Defendants"), as joint employers, and alleges as follows:

**NATURE OF THE ACTION**

1. This is a collective action brought pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. (the "FLSA"), to recover unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and costs from Defendants for their willful violations of the FLSA.

2. Defendants have systematically and unlawfully misclassified Plaintiff and similarly situated employees as exempt from the overtime requirements of the FLSA under the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1), in order to avoid paying ANY overtime compensation to these employees for hours worked in excess of forty (40) hours per workweek.

3. Defendants improperly classified truck maintenance technicians, cart maintenance technicians, equipment maintenance technicians, and other similarly situated employees as exempt under the Motor Carrier Exemption despite the fact that these employees do not meet the requirements for this exemption.

4. The Motor Carrier Exemption does not apply to Plaintiff and the proposed collective action members because they are not employed by a motor carrier, they are not drivers, driver's helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce, and their work does not directly affect the safety of operation of motor vehicles in interstate commerce. Rather, these employees primarily perform maintenance on shopping carts, equipment, and facilities, not motor vehicles, and any work they perform on vehicles is merely incidental to their primary duties.

5. As a result of Defendants' unlawful misclassification scheme, Plaintiff and similarly situated employees have been denied overtime compensation at the

rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek, in violation of 29 U.S.C. § 207(a)(1).

6.     Plaintiff seeks to recover unpaid overtime wages for himself and all similarly situated employees for all hours worked over forty (40) hours per workweek during the applicable limitations period.

7.     Plaintiff also seeks liquidated damages in an amount equal to the unpaid overtime compensation owed to Plaintiff and the collective action members, as well as reasonable attorneys' fees, costs, and expenses.

8.     Defendants' violations of the FLSA were willful and undertaken without any good faith basis for believing that their conduct complied with the law. Defendants implemented this misclassification scheme after being sued in a separate FLSA collective action in or around June 2024, demonstrating their knowing and intentional disregard for the requirements of the FLSA.

9.     After conditional certification was granted and notice was issued in the prior lawsuit filed in June 2024, Defendants changed their classification practices and began improperly classifying maintenance technicians as exempt under the Motor Carrier Exemption to avoid their overtime obligations under the FLSA.

10.     Defendants' willful violations entitle Plaintiff and the collective action members to a three-year statute of limitations period under 29 U.S.C. § 255(a).

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

12.    This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in the State of Florida and within this judicial district, and because the unlawful acts and omissions giving rise to this action occurred within this judicial district.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants reside and conduct business in this judicial district, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## THE PARTIES

14.    Plaintiff TASHAWN FRISBY is an individual who resides in Pinellas County, Florida.

15.    At all times relevant to this action, Plaintiff was employed by Defendants as a Maintenance Technician from approximately September 19, 2024, through May 2025.

16.    Plaintiff has consented in writing to be a party to this action pursuant to 29 U.S.C. § 216(b). Plaintiff's written consent is attached hereto as Exhibit A.

17. Defendant JIMCO MAINTENANCE INC. ("JIMCO") is a Florida Profit Corporation with its principal place of business located at 710 Commerce Drive, Suite 107, Venice, Florida 34292. *See* Sunbiz attached as Exhibit B.

18. Defendant LYNN FIELD is an individual who serves as the registered agent for JIMCO and is sued in her individual capacity.

19. JIMCO is a rolling cart maintenance company that provides maintenance, repair, and refurbishment services for shopping carts and related equipment to major grocery store chains, including but not limited to Publix Super Markets, Food Lion, and other retail establishments throughout the Southeastern and Mid-Atlantic United States.

20. Defendant Lynn Field owns and/or controls JIMCO and is actively involved in the day-to-day operations of the company, including but not limited to setting employee work schedules, determining pay rates, making hiring and firing decisions, and establishing company policies and practices regarding employee compensation.

21. Personal jurisdiction over Defendants is proper because Defendants conduct substantial business activities within the State of Florida and within this judicial district, maintain their principal place of business within this judicial district, and committed the unlawful acts alleged herein within this judicial district.

22.    At all times relevant to this action, Defendants have been and continue to be an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(r) and (s)(1).

23.    At all times relevant to this action, Defendants have been and continue to be engaged in interstate commerce within the meaning of the FLSA.

24.    At all times relevant to this action, Defendants JIMCO and Lynn Field have been and continue to be "joint employers" of Plaintiff and the proposed collective action members within the meaning of the FLSA, and each Defendant exercised significant control over Plaintiff's and the collective action members' terms and conditions of employment, including but not limited to hiring, firing, supervision, work schedules, job assignments, pay rates, and payroll practices.

## STATEMENT OF FACTS

### A.    Defendants' Business Operations

25.    JIMCO operates a rolling cart maintenance business that provides maintenance, repair, and refurbishment services for shopping carts, hand baskets, and related equipment used by grocery stores and retail establishments.

26.    Defendant JIMCO holds itself out to the public via its website:

"For more than 50 years, JIMCO has set the standard for defining the true meaning of a business partner. Jimco is more than a rolling cart maintenance company—Jimco is your partner, as we share the same mission and values you cherish. Jimco succeeds by creating exceptional in-store experiences for your customers, just like you. Our unique perspective into your customers' needs motivates our

technicians to put the time, care and attention into finding innovative, yet solid, solutions which align with your business goals. Carts and equipment performing at their highest level increase customer as well as employee loyalty and satisfaction, extend product life, increase revenue while at the same time decrease the risk for insurance and workers' comp claims. Creating exceptional customer experiences— one cart at a time—has been our heritage for 50 years. It's our ongoing promise to you."

See *https://jimcos.com* *(last visited on March 9, 2026).*

27.    JIMCO provides these services to major grocery store chains and retail establishments throughout Florida and the Southeastern and Mid-Atlantic regions of the United States, including but not limited to Publix Super Markets, Food Lion, and other regional and national retailers.

28.    JIMCO employs more than two hundred (200) employees across its various locations and service areas.

29.    JIMCO operates facilities and provides services in multiple states throughout the Southeastern and Mid-Atlantic United States, including but not limited to Florida, Georgia, South Carolina, North Carolina, Virginia, and other states.

30.    At all times relevant to this action, Defendants have been engaged in interstate commerce within the meaning of the FLSA, including but not limited to: (a) providing services to retail establishments that sell goods that have moved in interstate commerce; (b) purchasing equipment, supplies, and materials from out-

of-state vendors; (c) operating across state lines; and (d) engaging in other activities that constitute interstate commerce.

31. At all times relevant to this action, Defendants' gross annual revenue has exceeded $500,000.00.

32. At all times relevant to this action, Defendants have been and continue to be "employers" within the meaning of 29 U.S.C. § 203(d).

33. At all times relevant to this action, Plaintiff and the proposed collective action members have been and continue to be "employees" within the meaning of 29 U.S.C. § 203(e).

34. At all times relevant to this action, Defendants JIMCO and Lynn Field have been joint employers of Plaintiff and the proposed collective action members within the meaning of the FLSA.

35. Defendant Lynn Field has exercised substantial control over the employment relationship between JIMCO and its employees, including Plaintiff and the proposed collective action members, by: (a) owning and/or controlling JIMCO; (b) making decisions regarding hiring, firing, and discipline of employees; (c) setting and approving employee pay rates and compensation policies; (d) establishing work schedules and job assignments; (e) supervising employees directly or through subordinate managers; (f) maintaining and controlling

employee payroll records; and (g) otherwise exercising operational control over JIMCO's business operations and employment practices.

### B.   The Prior FLSA Lawsuit and Defendants' Response

36.    In or around June 2024, Defendants were sued in a separate FLSA collective action lawsuit pending in this District alleging violations of the FLSA's overtime requirements[1].

37.    In that prior lawsuit, plaintiffs alleged that Defendants failed to pay overtime compensation to maintenance technicians and other similarly situated employees for hours worked in excess of forty (40) hours per workweek.

38.    The court in that prior lawsuit granted conditional certification of a collective action and authorized notice to be sent to potential collective action members.

39.    During the notice process in the prior lawsuit, Plaintiff's counsel identified employees who appeared to meet the class definition but were not included on the notice list. Upon inquiry, defense counsel, after conferring with Defendants, advised that Defendants had classified these employees as exempt from the FLSA's overtime requirements. This was Plaintiff's first notice of Defendants' reclassification of these positions.

---

[1] *Mentry v Jimco Maintenance, Inc., et al.* Case 8:24-cv-01747-WFJ-AAS

40. After conditional certification was granted and notice was issued in the prior lawsuit, Defendants changed their employment practices and classification policies in an apparent attempt to avoid liability for ongoing FLSA violations.

41. Specifically, beginning in or around June 2024, Defendants began classifying truck maintenance technicians, cart maintenance technicians, equipment maintenance technicians, and other employees in similar positions as "exempt" from the FLSA's overtime requirements under the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1).

42. Defendants did not implement any material changes to the job duties, responsibilities, vehicles used, or operational structure of these positions at the time of the reclassification. The duties performed by Plaintiff and similarly situated employees remained substantially the same before and after Defendants began classifying these employees as exempt under the Motor Carrier Exemption.

43. From June 24, 2024 through the present, Defendants have classified these employees as exempt under the Motor Carrier Exemption and have paid them NO overtime compensation whatsoever for hours worked in excess of forty (40) hours per workweek.

44. These employees regularly work in excess of forty (40) hours per workweek.

45.     Despite working more than forty (40) hours per workweek on a regular basis, these employees have not received any overtime premium compensation (i.e., compensation at one and one-half times their regular rate of pay) for hours worked over forty (40) hours per workweek since Defendants reclassified them as exempt in June 2024.

46.     Despite the prior lawsuit and mediation conducted on or about April 4, 2025, Defendants continued to apply the same classification and overtime practices to maintenance technicians thereafter.

## C.     The Job Duties of the Misclassified Employees

47.     The job duties of the employees whom Defendants have misclassified as exempt under the Motor Carrier Exemption are substantially similar or identical to the job duties described in job postings that Defendants have published on Indeed.com and other employment websites.

48.     Although Defendants have used different job titles for these positions, including but not limited to "Cart Leader" or similar designations, the job duties performed by these employees were substantially similar and did not materially differ in a manner that would qualify them for exemption under the Motor Carrier Exemption.

49.     These employees' primary job duties include, but are not limited to:

a.    Inspecting, maintaining, repairing, and refurbishing shopping carts, hand baskets, and related equipment used by grocery stores and retail establishments;

b.    Performing preventive maintenance on shopping carts and equipment;

c.    Replacing wheels, handles, baskets, and other components of shopping carts;

d.    Cleaning and sanitizing shopping carts and equipment;

e.    Organizing and managing inventory of shopping carts and equipment at retail store locations;

f.    Retrieving shopping carts from parking lots and other areas and returning them to designated collection areas;

g.    Performing minor repairs and maintenance on equipment and facilities at retail store locations, such as cart corrals, storage areas, and related structures;

h.    Documenting maintenance activities and completing required paperwork and reports;

i.    Communicating with store management and Defendants' supervisors regarding maintenance needs and issues;

j.    Loading and unloading shopping carts and equipment from trucks for transport between locations; and

k.    Performing other duties as assigned related to the maintenance and management of shopping carts and related equipment.

50.    Some of these employees may occasionally perform incidental maintenance tasks on the trucks or vehicles used to transport shopping carts and

equipment between locations, such as checking fluid levels, tire pressure, or performing other basic vehicle maintenance tasks.

51. Any driving performed by Plaintiff and similarly situated employees was incidental to the performance of maintenance services and was undertaken solely to travel between customer locations where maintenance work was performed.

52. However, any work that these employees perform on motor vehicles is merely incidental to their primary job duties, which involve the maintenance, repair, and management of shopping carts and related equipment, not motor vehicles.

53. These employees spend the substantial majority of their working time performing maintenance on shopping carts, equipment, and facilities, not on motor vehicles.

54. These employees are not drivers, driver's helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce within the meaning of 29 U.S.C. § 213(b)(1).

**D. The Motor Carrier Exemption Does Not Apply**

55. The Motor Carrier Exemption, 29 U.S.C. § 213(b)(1), provides an exemption from the FLSA's overtime requirements for "any employee with respect

to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49."

56.    The Motor Carrier Exemption applies only to employees who are: (a) employed by a motor carrier or motor private carrier; and (b) are drivers, driver's helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce within the meaning of the Motor Carrier Act.

57.    Defendants are not engaged in the business of transporting goods or passengers, and Plaintiff and the Collective members were not employed in positions subject to regulation by the Secretary of Transportation. Defendants' primary business is the maintenance and repair of shopping carts and related equipment, not the transportation of goods or passengers.

58.    Defendants' business does not involve the transportation of goods or passengers for hire, and Plaintiff and the Collective members were not employed to transport property in interstate commerce. Any transportation performed was incidental to the provision of maintenance services.

59.    The employees whom Defendants have misclassified as exempt under the Motor Carrier Exemption are not employed by a motor carrier or motor private carrier.

60.   These employees are not drivers, driver's helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce.

61.   These employees' work does not directly affect the safety of operation of motor vehicles in interstate commerce within the meaning of the Motor Carrier Exemption.

62.   These employees primarily perform maintenance on shopping carts, equipment, and facilities, not motor vehicles, and any work they perform on motor vehicles is merely incidental to their primary duties and does not affect the safety of operation of motor vehicles in interstate commerce.

63.   The Motor Carrier Exemption therefore does not apply to these employees, and they are entitled to overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek pursuant to 29 U.S.C. § 207(a)(1).

64.   Defendants' misclassification of these employees as exempt under the Motor Carrier Exemption is unlawful and violates the FLSA.

65.   Defendants have no good faith basis for classifying these employees as exempt under the Motor Carrier Exemption.

66.    Defendants implemented this misclassification scheme after being sued in a prior FLSA collective action, demonstrating their knowing and intentional disregard for the requirements of the FLSA.

67.    Defendants' violations of the FLSA have been willful within the meaning of 29 U.S.C. § 255(a).

## COLLECTIVE ACTION ALLEGATIONS

68.    Plaintiff brings this action as a collective action pursuant to 29 U.S.C. §§ 206, 207, and 216(b) on behalf of himself and all other similarly situated current and former employees of Defendants.

69.    Plaintiff seeks certification of the following collective action class (the "Collective")[2]:

> "All employees classified by Defendants as exempt under the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1), including but not limited to Maintenance Technicians, Truck Maintenance Technicians, Cart Maintenance Technicians, Exterior Facilities Maintenance Technicians, Compactor Maintenance Technicians, and other employees holding comparable positions with different titles, who were employed by Defendants from March 3, 2023 to the entry of judgment in this case, who were not paid overtime compensation for hours worked in excess of forty (40) hours per workweek due to Defendants' classification of them as exempt."

---

[2] Excluded from the proposed Collective are any individuals who previously participated in and received monetary compensation in connection with the prior FLSA collective action filed against Defendants in or around June 2024, but only for the time periods covered by any settlement, judgment, or release entered in that action. Individuals who worked for Defendants outside of the time periods covered by any such settlement, judgment, or release are not excluded from the proposed Collective for those separate time periods.

70.    To the extent any individual previously participated in and received monetary compensation in connection with the prior FLSA collective action resolved in or around April 4, 2025, such individuals are excluded from this Collective only for the time periods covered by the settlement or release in that action. Plaintiff seeks recovery in this action only for violations occurring after April 4, 2025 with respect to such individuals.

71.    The members of the proposed Collective are similarly situated to Plaintiff because they (a) were employed by Defendants in positions classified by Defendants as exempt under the Motor Carrier Exemption; (b) performed the same or substantially similar job duties as Plaintiff and each other; (c) were subject to the same unlawful policy, practice, and plan of misclassifying employees as exempt under the Motor Carrier Exemption in order to avoid paying overtime compensation; (d) regularly worked more than forty (40) hours per workweek; (e) were not paid overtime compensation at the rate of one and one-half times their regular rate of pay for hours worked in excess of forty (40) hours per workweek; (f) were denied overtime compensation as a result of Defendants' uniform policy and practice of misclassifying them as exempt under the Motor Carrier Exemption; and (g) have claims against Defendants that are based on the same factual and legal theories as Plaintiff's claims.

72. Defendants maintained a policy, practice, and plan of misclassifying Plaintiff and the members of the proposed Collective as exempt under the Motor Carrier Exemption despite knowing that these employees did not qualify for this exemption.

73. Defendants' violations of the FLSA with respect to Plaintiff and the members of the proposed Collective were willful within the meaning of 29 U.S.C. § 255(a).

74. As a result of Defendants' willful violations, Plaintiff and the members of the proposed Collective are entitled to recover unpaid overtime compensation for a period of three (3) years preceding the filing of this Complaint, plus liquidated damages, interest, attorneys' fees, and costs.

75. Defendants are required to maintain records of the hours worked by their employees and the wages paid to those employees pursuant to the federal recordkeeping requirements set forth in 29 C.F.R. § 516.

76. To the extent that Defendants have failed to maintain accurate records of the hours worked by Plaintiff and the members of the proposed Collective, Plaintiff and the Collective members are entitled to the benefit of the burden-shifting framework established in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), and its progeny.

77.   Under the Anderson burden-shifting framework, where an employer has failed to maintain accurate records of hours worked, an employee may establish the amount and extent of work as a matter of just and reasonable inference, and the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

78.   The proposed Collective includes several hundred current and former employees of Defendants who were classified as exempt under the Motor Carrier Exemption and were denied overtime compensation during the applicable limitations period.

79.   The members of the proposed Collective are readily identifiable from Defendants' payroll records, personnel records, and other business records.

80.   Plaintiff is a member of the proposed Collective and his claims are typical of the claims of the other members of the Collective.

81.   Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed Collective.

82.   Plaintiff's counsel are experienced in prosecuting collective actions under the FLSA and will adequately represent the interests of the proposed Collective.

83. A collective action is the superior method for the fair and efficient adjudication of this controversy because:

a. The members of the proposed Collective are similarly situated and their claims arise from the same unlawful policy, practice, and plan;

b. The members of the proposed Collective have been subjected to the same or substantially similar unlawful conduct by Defendants;

c. The claims of the members of the proposed Collective are based on the same legal theories;

d. A collective action will promote judicial economy by resolving common questions of law and fact in a single proceeding rather than through numerous individual lawsuits;

e. A collective action will ensure consistent adjudication of the claims of similarly situated employees;

f. Many members of the proposed Collective may be unaware of their rights under the FLSA or may be reluctant to pursue individual claims due to fear of retaliation or the expense and burden of individual litigation; and

g. A collective action will provide an efficient mechanism for providing notice to potential collective action members and allowing them to opt in to this litigation.

h.    Plaintiff requests that the Court conditionally certify this action as a collective action pursuant to 29 U.S.C. § 216(b), authorize notice to be sent to all members of the proposed Collective, and approve the form and manner of such notice.

## COUNT I
FAIR LABOR STANDARDS ACT:
UNPAID OVERTIME WAGES DUE TO MISCLASSIFICATION
(On Behalf of Plaintiff and the Collective Action Members)

78.    Plaintiff re-alleges and incorporates by reference all of the allegations contained in paragraphs 1 through 77 above as if fully set forth herein.

79.    This Count is brought as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of Plaintiff and all members of the proposed Collective who opt in to this action.

80.    Plaintiff and the members of the proposed Collective are similarly situated to one another because they were employed by Defendants in positions that Defendants classified as exempt under the Motor Carrier Exemption, they performed the same or substantially similar job duties, they were subject to the same unlawful policy and practice of misclassification, they regularly worked more than forty (40) hours per workweek, and they were denied overtime compensation as a result of Defendants' uniform policy of misclassifying them as exempt.

81.   At all times relevant to this action, Defendants have been and continue to be "employers" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(d) and 206(a).

82.   At all times relevant to this action, Plaintiff and the members of the proposed Collective have been and continue to be "employees" within the meaning of 29 U.S.C. § 203(e).

83.   The FLSA requires that covered employees be paid overtime compensation at a rate of not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207(a)(1).

84.   Defendants have willfully and intentionally misclassified Plaintiff and the members of the proposed Collective as exempt from the FLSA's overtime requirements under the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1), in order to avoid paying overtime compensation to these employees.

85.   The Motor Carrier Exemption does not apply to Plaintiff and the members of the proposed Collective because:

a.   They are not employed by a motor carrier or motor private carrier;

b.   They are not drivers, driver's helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce;

c.     Their work does not directly affect the safety of operation of motor vehicles in interstate commerce;

d.     They primarily perform maintenance on shopping carts, equipment, and facilities, not motor vehicles; and

e.     Any work they perform on motor vehicles is merely incidental to their primary duties and does not affect the safety of operation of motor vehicles in interstate commerce.

86.     As a result of Defendants' unlawful misclassification of Plaintiff and the members of the proposed Collective as exempt under the Motor Carrier Exemption, Defendants have failed to pay these employees overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek, in violation of 29 U.S.C. § 207(a)(1).

87.     Plaintiff and the members of the proposed Collective regularly worked more than forty (40) hours per workweek during the applicable limitations period.

88.     Defendants have failed to pay Plaintiff and the members of the proposed Collective any overtime premium compensation for hours worked in excess of forty (40) hours per workweek since implementing their unlawful misclassification scheme in or around June 2024.

89.     Plaintiff and the members of the proposed Collective are entitled to recover unpaid overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek during the applicable limitations period.

90.     Defendants' violations of the FLSA have been willful within the meaning of 29 U.S.C. § 255(a).

91.     Defendants implemented their unlawful misclassification scheme after being sued in a prior FLSA collective action and after conditional certification was granted in that case, demonstrating their knowing and intentional disregard for the requirements of the FLSA.

92.     Defendants have had no good faith basis for believing that their misclassification of Plaintiff and the members of the proposed Collective as exempt under the Motor Carrier Exemption complied with the FLSA.

93.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the members of the proposed Collective are entitled to recover unpaid overtime compensation for a period of three (3) years preceding the filing of this Complaint and continuing through the date of judgment.

94.     Plaintiff and the members of the proposed Collective are also entitled to recover liquidated damages in an amount equal to the unpaid overtime compensation owed to them pursuant to 29 U.S.C. § 216(b).

95.   Plaintiff and the members of the proposed Collective are further entitled to recover prejudgment interest, post-judgment interest, reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all similarly situated members of the proposed Collective, respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

A. An order conditionally certifying this action as a collective action pursuant to 29 U.S.C. § 216(b) and authorizing prompt notice to be sent to all members of the proposed Collective in a form and manner approved by the Court;

B. An order designating Plaintiff as the representative of the Collective and appointing Plaintiff's counsel as Class Counsel for the Collective;

C. A declaratory judgment that Defendants' policies, practices, and procedures complained of herein are unlawful and violate the Fair Labor Standards Act;

D. An injunction prohibiting Defendants from continuing to engage in the unlawful policies, practices, and procedures complained of herein and requiring Defendants to comply with the Fair Labor Standards Act;

E. A finding that Defendants' violations of the FLSA were willful and an order imposing a three-year statute of limitations pursuant to 29 U.S.C. § 255(a);

F. An award of unpaid overtime compensation owed to Plaintiff and the members of the Collective for all hours worked in excess of forty (40) hours per workweek during the applicable limitations period;

G. An award of liquidated damages in an amount equal to the unpaid overtime compensation owed to Plaintiff and the members of the Collective pursuant to 29 U.S.C. § 216(b);

H. An award of prejudgment interest and post-judgment interest at the maximum rate permitted by law;

I. An award of reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action pursuant to 29 U.S.C. § 216(b); and

J. Such other and further relief as this Court deems just and proper.

***(Remainder of page left intentionally blank)***

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 24th day of March 2026.

Respectfully submitted,

*/s Noah E. Storch*
Noah E. Storch, Esq.
Florida Bar No.: 0085476
RICHARD CELLER LEGAL, P.A.
7951 SW 6th Street,  Suite 316
Plantation, FL 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail:
**noah@floridaovertimelawyer.com**

*Counsel for Plaintiff*